UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ALBERT CONEY,

        Petitioner,

        v.

LINDA TRIBLEY,

        Respondent.[1]

_____/

CASE NO. 2:12-CV-10661
JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    <u>RECOMMENDATION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   <u>REPORT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.   *Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.   *Fourth Amendment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        3.   *Involuntary Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        4.   *Factual Basis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        5.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        6.   *Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    E.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    F.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.  <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

\*     \*     \*     \*     \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

---

[1]By Order entered this date, Linda Tribley has been substituted in place of Paul D. Klee as the proper respondent in this action.

II.     REPORT:

A.     *Procedural History*

1.     Petitioner John Albert Coney is a state prisoner, currently confined at the Ojibway Correctional Facility in Marenisco, Michigan.

2.     On January 20, 2009, petitioner was convicted of possession of between 50 and 449 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(iii); and possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f, pursuant to his guilty plea in the Jackson County Circuit Court.  On February 26, 2009, he was sentenced to concurrent terms of 7½-20 years' imprisonment on each count, to be served consecutive to a parole violator term of imprisonment.[2]  Petitioner did not seek leave to appeal his conviction or sentence.

3.     On March 19, 2010, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     COERCED GUILTY PLEA. JURISDICTIONAL DEFECTS EXIST IN THE INSTANT CASE, WHICH THE DEFENDANT CHALLENGE [sic] THE GUILTY PLEA ON THE CONSTITUTIONALITY OF THE STATUTE, OF THE STATE'S AUTHORITY TO PROSECUTE THE DEFENDANT, SUCH A CLAIM IS NEVER WAIVED BY A GUILTY PLEA.

II.     ABUSE OF PROCESS.  RADICAL JURISDICTIONAL DEFECTS IS SHOWN [sic] THROUGH THE PROCESS USED, THAT VIOLATES THE DEFENDANT'S RIGHTS OF A 4TH AND 14TH AMENDMENT VIOLATION WHEN, THE POLICE AND PROSECUTOR CREATED A FALSE MATERIAL DOCKET WHEN JUDGE FALAHEE, DID NOT ISSUE A SEARCH WARRANT FOR THE POLICE TO COMMENCE WITH SEARCHING FOR EVIDENCE.

III.    UNLAWFUL INCARCERATION.  JURISDICTIONAL DEFECTS WAS [sic] CREATED THROUGH UNLAWFUL CHARGES AFTER THE

---

[2]On the same date that he pleaded guilty in this case, petitioner also pleaded guilty in a separate case to a charge of obstruction of justice.  His habeas challenge to that conviction was denied by Judge Hood on October 31, 2012.

INITIAL ARREST WHEN, THE DEFENDANT COULD NOT BE TRIED STATUTORILY DUE TO THE POLICE AND PROSECUTOR NOT HAVING LEGAL AUTHORITY TO EXECUTE A SEARCH WARRANT IN THE VERY ABSENCE OF HAVING A COURT ORDER, WHICH MADE SUBJECT MATTER JURISDICTION NULL AND VOID, AND THE COERCED ILLUSORY PLEA INVOLUNTARILY RENDERED.

IV.    OBSTRUCTION OF JUSTICE. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 4TH AND 14TH AMENDMENTS WHEN, THE ACTIONS OF THE POLICE DEPARTMENT AND THE PROSECUTOR'S OFFICE MANIFEST, DIRECT ACTS OF OBSTRUCTION OF JUSTICE, WHEN THE DEFENDANT WAS PROSECUTED ABSENT THE STATE HAVING SUBJECT MATTER JURISDICTION TO PROSECUTE THE ACCUSE[D] ON CHARGES THAT DERIVED FROM THE POLICE TRESPASSING TO SEARCH FOR EVIDENCE.

V.     SELECTIVE PROSECUTION. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 14TH AMENDMENT WHEN, THE DEFENDANT'S INCARCERATION ORIGINATED THROUGH SELECTIVE PROSECUTION BY MALICE PREPENSE [sic], ABSENT SUBJECT MATTER JURISDICTION TO COMMENCE WITH PROSECUTION.

VI.    UNLAWFUL TRESPASSING.  JURISDICTIONAL DEFECTS EXIST ERADICATING ANY LEGAL AUTHORITY TO PROSECUTE THE DEFENDANT WHEN, THE POLICE WAS TRESPASSING AND OPERATING OUTSIDE COLOR OF LAW.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL.  CONSTITUTIONAL ERROR AGAINST THE SIXTH AMENDMENT WHEN, TRIAL COUNSEL'S ACTIONS MANIFEST GROSS NEGLIGENCE, AND A WILLFUL, AND WANTON DISREGARD TO CHALLENGE THE AVERMENTS PRESENTED, WHICH DEPRIVED THE DEFENDANT OF ANY FAIR PROCEEDINGS IN A COURT OF LAW.

On April 7, 2010, the trial court denied petitioner's motion for relief from judgment, concluding that it plainly appeared from the face of the motion that petitioner was not entitled to relief, MICH. CT. R. 6.504(B)(2).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Coney*, 488 Mich. 1046, 794 N.W.2d 580 (2011); *People v. Coney*, No. 298043 (Mich. Ct. App. Mar. 8, 2011).

4.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

3

on February 14, 2012.  As grounds for the writ of habeas corpus, he raises the first, third, and seventh claims that he raised in the state courts.

5.    Respondent filed her answer on August 15, 2012.  She contends that petitioner's challenge to the search is not cognizable and is waived by petitioner's guilty plea, that petitioner's remaining claims are procedurally defaulted, and that all of the claims are without merit.

6.    Petitioner filed a reply to respondent's answer on October 3, 2012, and a supplement to the petition on January 31, 2013.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged in two separate cases.  In the case that is the subject of this proceeding, petitioner was charged with drug and gun possession offenses resulting from the discovery of cocaine in a storage locker and guns in the home of the mother of petitioner's girlfriend.  In the second case, which was the subject of a separate petition before Judge Hood, petitioner was charged with solicitation of murder. The facts leading to the charges were described in the presentence report:

> On May 24, 2007, JNET was contacted by the Jackson County Sheriff's Department in reference to suspected cocaine being found in a storage unit at Canterbury Apartments.  The storage unit had been rented by Danielle Church, who had previously rented an apartment at the complex.  The defendant, John Coney is Danielle Church's boyfriend and he would come in monthly to pay the rent on the storage unit with a check from Church's bank account.
>
> Deputies made contact with Mr. Granger, a maintenance man at the apartment complex.  Mr. Granger stated that he had gone into the storage unit to clean it out and realized he had gone into the wrong unit.  He stated he was looking at miscellaneous items trying to determine the owner when he located what he believed to be a significant quantity of cocaine.  A search warrant was obtained to search the storage unit and the search conducted the same day.
>
> During the search police located a black gym bag.  Inside the bag was a plastic container that contained several baggies containing a white chunky substance believed to be cocaine.  These were separated into four different packages with the weights of 126.6 grams, 125.2 grams, 85.1 grams and 15.8 grams with another .9 grams located at the bottom of the container, which was not packaged in sandwich bags.  The total amount of the cocaine that was found was 353.6 grams.  Also located were an electronic scale and a cash register receipt from an auto parts store in the name of John

4

Coney.

On May 24, 2007 a search warrant was executed at 1104 N. Cooper Street. This is the residence of Nicolette Iveson, the mother of Danielle Church. While searching the residence, police located a safe. They asked Nicolette Iveson for the combination. She advised that approximately two weeks ago Danielle had brought over two guns, which she said belonged to John Coney. She stated that Church told her that she was afraid Coney would use them on her, therefore, wanted to get them away from him. The safe was opened and the police located two guns, a .38 caliber revolver and a 9 mm semi-automatic handgun. There was another gun in the safe that was in a gun case, it contained a loaded .38 caliber hand gun belonging to Roger Iveson.

* * * *

On November 21, 2007 Jackson County Sheriff's Detective Rose contacted Deputy Watson of the MSP CID unit. Detective Rose stated that inmate Darrin Gibson told him that one of his cell mates, John Coney, was trying to hire someone to kill his ex-girlfriend, Danielle Church. On November 26, 2007, an undercover officer interviewed Mr. Gibson. Mr. Gibson stated that Mr. Coney had asked him if he knew anyone who would kill his ex-girlfriend, Danielle Church, because she was the person who got him locked up on his current dope charge. Mr. Gibson stated that Mr. Coney's sister, Carmen Foster, and his girlfriend, known as "Mel Mel", would pay Mr. Gibson $2000.00 as a down payment and would pay him an additional $3000.00 and a Chevy Impala after the murder took place. Mr. Coney told him that he could get the information and money from Ms. Foster and "Mel Mel" (Melanie Farmer) and he provided the addresses and telephone numbers.

On November 26, 2007 Mr. Gibson was released from jail on a temporary basis to assist with the investigation. Upon being released, Mr. Gibson was picked up by JNET officers and placed under surveillance. Mr. Gibson attempted to make telephone contact with Coney's sister, Carmen Foster. He then drove to her residence, but no contact was made. Mr. Gibson then contacted "Mel Mel" via telephone and advised her he was "John John's boy." She stated that she was en route to get money from Mr. Coney's mother's house. She stated she would call him when she returned to Jackson. As soon as Mr. Gibson hung up with Mel Mel, Ms. Foster telephoned the undercover police officer's cell phone. She told Mr. Gibson to come to her home and she would show him where Ms. Church lived and worked. The undercover officer and Mr. Gibson drove to Carmen Foster's home and picked her up. Ms. Foster showed the two the residence and place of employment of Ms. Church. They then returned to Ms. Foster's house. After, Mr. Gibson and the undercover officer left, JNET surveillance saw Ms. Farmer arrive at Ms. Foster's home. Mr. Gibson and the undercover officer returned to the home a few minutes later. Mr. Gibson and Ms. Farmer went into a bedroom where Ms. Farmer gave him $800.00 as a down payment and they agreed to meet at 10:00 a.m. the next morning to get the rest of the money.

On November 27, 2007 undercover officers returned to Foster's home. Upon arrival, Mr. Gibson did not show up as arranged. The undercover officer made contact with Ms. Farmer, who stated that Mr. Gibson was to call her at 8:00 a.m. because he was supposed to get a truck. She stated that she was to take a motorcycle to Ohio to

sell it to get the rest of the money.  She stated she had the title for the Chevy Impala.
Officers made contact with Farmer later, who put Gibson on the telephone.  He stated
he and Farmer were on their way to sell the motorcycle and as soon as they got back
into town they would call and meet with the officer.  After several hours officers
located Gibson and Farmer and took them into custody.

Respondent's Answer, Ex. 1, Presentence Investigation Report, at 2-4.

The parties negotiated a plea agreement with respect to both cases.  Pursuant to the agreement, petitioner would plead guilty in the drug and gun case to a reduced charge of possession with intent to deliver less than 50 grams of cocaine and to felon in possession of a firearm.  He would also plead guilty in the solicitation of murder case to a reduced charge of obstruction of justice.  Petitioner would also plead guilty to being a fourth habitual offender.  Petitioner's plea was pursuant to a *Cobbs* agreement capping the minimum term of imprisonment at 7½ years, with the maximum to be determined by the court.  All sentences would be concurrent with each other, but consecutive to his parole violator term.  In exchange, the prosecution would dismiss all other charges against petitioner.  *See* Plea Tr., 3-6.  The trial court explained the charges to petitioner and the maximum penalty of life imprisonment that petitioner faced as a fourth habitual offender.  *See id*. at 6-10.  Petitioner denied that any promises or agreements had been made other than what was stated on the record, and denied that anyone threatened or coerced him into pleading guilty.  *See id*. at 10-11.  After establishing a factual basis for the pleas, *see id*. at 11-16, the court accepted petitioner's pleas.  *See id*. at 16-17.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state

court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99

(2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Analysis*

Construed broadly, petitioner's application, reply brief, and supplement to the petition raise several challenges to his convictions. The Court should conclude that each of these is without merit.

1.     *Jurisdiction*

Petitioner first asserts that the trial court lacked jurisdiction to try him because the search warrant was invalid and the searches leading to the charges against him were illegal. Petitioner is not entitled to habeas relief on this claim, for two reasons.

First, petitioner's jurisdiction claim is not cognizable on habeas review. It is well-established that habeas review does not extend to questions of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application

9

of its own laws."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001). As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917). Whether an indictment, information, or complaint is sufficient to confer jurisdiction on a trial court is likewise an issue of state law which is not cognizable on habeas review. *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D. Tex. 2001). Challenges to the sufficiency of a state court charging document will be cognizable on federal habeas review only where the amendment deprives a petitioner of his due process right to fair notice of the charges against him. *See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W.D. Mo. 1978). Petitioner does not contend that he lacked notice of the charges against him, and thus any defect in the complaint raises an issue of state law not cognizable on habeas review. *See Hill v. Ludwick*, No. 2:09-cv-11748, 2011 WL 5244824, at *5 (E.D. Mich. Nov. 3, 2011) (Roberts, J.).[3]

---

[3]Further, even if the complaint was defective, petitioner cannot show that the circuit court lacked jurisdiction. Although petitioner phrases his claim as going to the circuit court's subject matter jurisdiction, this type of jurisdiction is not implicated. Once that happened in petitioner's case, the circuit court did not lose jurisdiction even if the complaint or information filed by the prosecutor was defective in some way. *See Goecke*, 457 Mich. at 458, 579 N.W.2d at 876 ("Having once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed."); *People v. Miklovich*, 375 Mich. 536, 539, 134 N.W.2d 720, 722 (1965) ("Jurisdiction, having once vested in the circuit court, was not lost by virtue of the granting of the motion to quash the information."). Thus, even if the initial complaint filed by the prosecutor was defective, the circuit court nevertheless had jurisdiction over petitioner upon the filing of a proper return by the magistrate.

10

Second, petitioner cannot show that the trial court lacked jurisdiction.  As the Michigan Supreme Court has explained, subject matter jurisdiction is "the right of the court to exercise jurisdiction over a class of cases."  *People v. Goecke*, 457 Mich. 442, 458, 579 N.W.2d 868, 876 (1998).  Subject matter jurisdiction refers to the court's power to rule in the particular class of case in the abstract, not the court's power in the particular case before the court.  *See id*. at 458 n.16, 579 N.W.2d at 876 n.16.  The circuit court, as a court of general jurisdiction, *see* MICH. CONST. art. 6, § 13; MICH. COMP. LAWS §§ 600.151, .601, undoubtedly has the power to rule in criminal cases.  *See Goecke*, 457 Mich. at 458, 579 N.W.2d at 876.  Thus, the only question is whether the circuit court had personal jurisdiction over petitioner.  Under Michigan law, "[t]he circuit court acquires [personal] jurisdiction upon the filing of a proper return by the magistrate before whom the defendant has either been examined or waived examination."  *People v. Gaines*, 53 Mich. App. 443, 447, 220 N.W.2d 76, 78 (1974) (citing *People v. Curtis*, 389 Mich. 698, 707, 209 N.W.2d 243, 247-48 (1973)); *see also*, *Goecke*, 457 Mich. at 458, 579 N.W.2d at 876.  Petitioner does not contend that this did not occur in his case.  The mere fact that the charges arose from an allegedly illegal search did not deprive the circuit court of jurisdiction to try petitioner.  See People v. Rice, 192 Mich. App. 240, 244, 481 N.W.2d 10, 12 (1991) ("Assuming entry into defendant's home and subsequent arrest were improper, defendant's sole remedy here would be the suppression of evidence obtained as a result of the illegal arrest. The invalidity of an arrest does not deprive a court of jurisdiction to try a defendant."); *People v. Ferrigan*, 103 Mich. App. 214, 219, 302 N.W.2d 855, 857 (1981).  Accordingly, petitioner is not entitled to relief on this claim.

2.     *Fourth Amendment Claims*

Petitioner also claims that the search of the storage unit was illegal under the Fourth Amendment.  Petitioner is not entitled to habeas relief on this claim for three reasons.

11

First, the claim is not cognizable on habeas review. Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam). Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985). There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). Thus, petitioner's Fourth Amendment claim is not cognizable.

Second, this claim is waived by petitioner's guilty plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d

1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In pleading guilty, petitioner did not reserve his right to appeal the Fourth Amendment issues, and thus his guilty plea constitutes a waiver of his Fourth Amendment claims. *See United States v. Villegas*, 388 F.3d 317, 322 (7th Cir. 2004); *United States v. Martinez-Orozco*, 52 Fed. Appx. 790, 792 (6th Cir. 2002).

Third, the claim is without merit. It is undisputed that the search warrant arose from a private person's entry into the storage area. While petitioner contends that Granger went into the storage area deliberately to search for evidence, rather than mistakenly as claimed by Granger, this is of no significance. It is well established that the Fourth Amendment only "applies to governmental action" and is not implicated by private "individuals [] taking the property of another." *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). As the Supreme Court has explained, the Fourth Amendment "proscrib[es] only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobson*, 466 U.S. 109, 113 (1984) (internal quotation omitted). In short, "[t]he Fourth Amendment does not apply to searches or seizures by private persons," and "the government's subsequent use of the information obtained in the private search does not implicate the Fourth Amendment[.]" *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995). Because the warrant was based on information obtained by a private individual not acting with the knowledge of or at the behest of the police, petitioner cannot show that the search violated the Fourth Amendment. For these three reasons, petitioner is not entitled to habeas

relief on his Fourth Amendment claims.

      3.     *Involuntary Plea*

      Petitioner also contends that his plea was involuntary.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a.  Clearly Established Law*

      A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

*b.  Analysis*

      Petitioner does not contend that he was coerced into pleading guilty or that the decision was

not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. . . . Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich.2001) (Steeh, J.). In short where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).

Rather, petitioner contends that his plea was involuntary because it was illusory. Specifically, he contends that the drug and gun charges should have been dismissed based on the illegal search and that the evidence did not support these charges, and that the prosecution knew it could not substantiate the solicitation of murder charge. These arguments are without merit. As explained above, petitioner cannot show that the discovery of the guns and drugs resulted from an illegal search. Nor can he show that the charges were not supportable under the law. Petitioner contends that because he did not

15

physically possess the drugs or guns at the time of his arrest, he could not be found guilty of the drug and gun possession charges. This argument is incorrect. Petitioner admitted at the plea hearing that at some point in time he possessed a firearm, *see* Plea Tr., at 13-14, and Nicolette Iveson indicated that the guns recovered in her safe belonged to petitioner. This would have been sufficient evidence to sustain a conviction for felon in possession of a firearm. *See People v. Hayden*, 132 Mich. App. 273, 296, 348 N.W.2d 672, 684 (1984) (witness testimony alone can establish possession, even without recovery or introduction at trial of firearm). Likewise, petitioner admitted that he had access to the cocaine and his intent was to sell the cocaine, *see* Plea Tr., at 12, and there was evidence that petitioner made the monthly payments for the storage area and that a receipt bearing his name was found inside the storage area. This evidence would have supported a finding that he constructively possessed the cocaine found in the storage locker. *See People v. Johnson*, 466 Mich. 491, 500, 647 N.W.2d 480, 486 (2002); *People v. Wolfe*, 440 Mich. 508, 519-20, 489 N.W.2d 748, 753 (1992). With respect to the solicitation charge, the police had an informant who indicated that petitioner attempted to hire him to kill Church. The police observed the informant take actions consistent with petitioner's solicitation, including obtaining money as a down payment. Although petitioner points to a phone transcript in which the informant later indicated that the police pressured him into cooperating, contrary to petitioner's assertion the credibility of the informant's statements in that conversation is subject to dispute and therefore it has not been "definitively established" that he did not solicit Church's murder.

As the Supreme Court has explained, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751.

16

The Court in *Brady* did explicitly "make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty," *id.* at 751 n.8, but there is no evidence that the prosecutor deliberately employed her charging discretion to induce petitioner's plea. As noted above, each of the charges levied against petitioner was supported by some evidence. Whether this evidence would have sufficed to prove the elements of the charged crimes beyond a reasonable doubt is irrelevant. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      4.     *Factual Basis*

      Petitioner also contends that the trial court failed to establish an adequate factual basis for the plea with respect to any of the charges for which he was convicted. This claim is without merit. "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254." *Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991). Because the writ of habeas corpus exists only to correct errors of federal law, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Circ. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

5.      *Ineffective Assistance of Counsel*

Petitioner next contends that he was deprived of the effective assistance of counsel in several respects.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a.  Clearly Established Law

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective

18

assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner

bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352

(6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a

state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*,
> 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity
> of the very adversary process the right to counsel is meant to serve. *Strickland*, 466
> U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging
> counsel's representation is a most deferential one. Unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew of materials outside the record, and
> interacted with the client, with opposing counsel, and with the judge. It is "all too
> tempting" to "second-guess counsel's assistance after conviction or adverse sentence."
> *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843,
> 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122
> L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted
> to incompetence under "prevailing professional norms," not whether it deviated from
> best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The Sixth Amendment right to counsel extends to the plea bargaining process, and thus

"[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'"

*Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also*, *Missouri v. Frye*, 132 U.S. 1399, 1406 (2012).   However, the *Strickland* standard is particularly rigorous in the plea bargaining context.   Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011).   Further, to demonstrate prejudice as a result of counsel's performance with respect to the entry of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### b. Analysis

Petitioner first contends that counsel was ineffective for failing to fully investigate the charges. He contends specifically that counsel knew about the phone conversation in which the informant stated that he had been coerced and that had counsel investigated he would have discovered that the prosecution could not have proven the charges against him beyond a reasonable doubt.   Apart from the solicitation charge, however, petitioner does not indicate what any further investigation would have revealed with respect to the other charges against him.   And with respect to those charges petitioner received a substantial reduction in potential sentence by pleading guilty. Petitioner was charged with possessing with intent to deliver 50-449 grams of cocaine, which carried  the potential for a more severe sentence.   Petitioner was also charged with possession of a firearm during the commission of a felony, which carried a mandatory consecutive term of two years' imprisonment.

20

With respect to the solicitation charge, even if the informant testified that he was coerced, there was significant other evidence bolstering the informant's initial report to the police that petitioner attempted to solicit Church's murder.  Consistent with the statement he had made to the police, the informant contacted petitioner's sister and girlfriend and obtained a down payment on the planned murder.  In light of this evidence and the significant charges against him, counsel was not ineffective in concluding that the plea deal, which included dropping of the most serious charges and a favorable sentence agreement, was the best course of action.  And in light of this petitioner cannot show a reasonable probability that, had counsel investigated further, he would not have pleaded guilty and would have insisted on going to trial.

Petitioner also contends that counsel was ineffective for failing to discover that the warrant was invalid because Judge Falahee, who authorized the warrant, was retired at the time he signed the warrant.  However, attached to respondent's answer is an assignment designating Judge Falahee as a visiting judge for the period from May 1 through June 15, 2007.  This assignment was permissible under state law.  *See* MICH. CONST. art. 6, § 23; MICH. COMP. LAWS § 600.22(1).  Therefore, petitioner cannot show that Judge Falahee lacked the power to sign the search warrant.  Nor, for the reasons explained above, can petitioner show that the warrant itself was invalid.  The warrant was based on the discovery of crack cocaine by a private citizen.  The initial search by a private citizen does not implicate the Fourth Amendment, and the subsequent search warrant based on what that citizen discovered was permissible.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

6.      *Post-Conviction Relief*

Finally, in his supplement, petitioner contends that the state courts failed to adjudicate his motion for relief from judgment on the merits.  To the extent petitioner asserts this argument in order

21

to overcome respondent's procedural default argument, as explained above each of petitioner's claims is without merit and may be denied on that basis without relying on any procedural bar. To the extent petitioner asserts this claim as an independent ground for relief, it is without merit for two reasons. First, the state trial court did resolve the claims on the merits, explicitly stating that it found "no legal or factual basis to support them and that it plainly appears from the face of the materials that Defendant is not entitled to relief." *People v. Coney*, No. 07-004301-FH (Jackson County, Mich., Cir. Ct. Apr. 7, 2010). Although brief, this constitutes a determination on the merits. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). Second, even if the state courts committed some error in the handling of petitioner's motion for relief from judgment, such an error would not provide a basis for habeas relief. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because

22

we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the

23

applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, it is clear that petitioner's jurisdiction, Fourth Amendment, and post-conviction relief claims are not cognizable on habeas review. It is further clear that each of these claims is without merit

24

either as a factual matter or as a matter of law.  Thus, the resolution of these claims is not reasonably debatable.  Because there is no constitutional requirement that a state establish a factual basis for a plea and because the transcript of the plea hearing shows that petitioner's plea was knowing and voluntary, the resolution of petitioner's plea claims is not reasonably debatable.  Finally, for the reasons explained above, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 3, 2013                      S/Paul J. Komives
                                        Paul J. Komives
                                        United States District Judge